[Cite as *Shetler v. Shetler*, 2013-Ohio-5860.]

| | | |
|---|---|---|
| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | FIFTH JUDICIAL DISTRICT |
| COUNTY OF STARK | ) | |

CINDY M. SHETLER

    Appellee

v.

WILLIAM B. SHETLER

    Appellant

C.A. No.     2012 CA 00126

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF STARK, OHIO
CASE No.    2007 DR 00676

DECISION AND JOURNAL ENTRY

Dated: December 16, 2013

MOORE, Presiding Judge.

{¶1}    Defendant, William B. Shetler, appeals from the judgment of the Stark County Court of Common Pleas, Family Court Division. We affirm.

I.

{¶2}    The facts of this case were set forth in a prior appeal decided in 2009, *Shetler v. Shetler*, ("*Shetler I*"), 5th Dist. Stark No. 2008CA00036, 2009-Ohio-1581, ¶ 2-7, as follow:

The parties were married on August 17, 1982, and three children were born as issue of the marriage. All three children are now emancipated.

[]Husband is 59 years[ ]old, and has practiced law for 25 years, primarily as a solo practitioner. On November 5, 2004, Husband suffered a heart attack, and as a result underwent triple bypass surgery in 2005. [Husband] maintains [that] his current health impairs his earning ability.

[]Wife is 51 years[ ]old. She attended Stark Technical College for one year after graduating from high school. Subsequently, she worked as a legal secretary in Alliance Municipal Court for five years. One year after the birth of the parties' first child, Wife left her employment with the Municipal Court, and did not work outside the home. Wife later transferred her governmental PERS account to an IRA with Butler-Wick, which has a current value of $22,170.00. In 1999, Wife

began working part-time for the Alliance YMCA. Wife also worked part-time at the Alliance Elks [C]lub as a lifeguard.

The parties enjoyed an affluent lifestyle during the marriage. Husband administered the majority of the parties' financial affairs. * * *.

* * *

Via Judgment Entry of February 6, 2008, the trial court granted Wife's complaint for divorce on the grounds of incompatibility. The trial court found Husband engaged in financial misconduct, and divided the parties' assets and liabilities accordingly. The trial court ordered Husband pay Wife spousal support in the amount of $4,000[] per month for 120 months. The trial court further ordered Husband pay Wife's attorney fees in the amount of $15,431[].

{¶3} Husband appealed from the divorce decree, raising the following arguments in his assignments of error: (1) the trial court's determination that he committed financial misconduct was against the weight of the evidence, (2) the weight of the evidence supported a determination that Wife engaged in financial misconduct, (3) the trial court erred in classifying marital and non-marital assets, (4) the trial court abused its discretion in failing to value the marital portion of Wife's IRA, (5) the trial court's errors resulted in an abuse of discretion in the division of assets and debts, (6) the trial court abused its discretion in awarding $4,000 per month in spousal support, and (7) the trial court abused its discretion in awarding attorney fees to Wife. *Id.* at ¶ 9-15. This Court agreed with Husband insofar as he argued that the trial court erred in determining (1) that Husband engaged in financial misconduct, (2) that a bed and painting were Wife's separate property, and (3) that certain items contained on Husband's separate property list be awarded to Wife solely on the basis that such items were in her possession. *Id.* at ¶ 26-27, 153-154. On this basis, we remanded the matter to the trial court to re-divide the parties' assets and liabilities and to reconsider the issue of spousal support after determination of the new division of assets and liabilities. *Id.* at ¶ 26, 153-54, 158, 166-167. *See* R.C. 3105.18(B) ("after the court

determines the division or disbursement of property under section 3105.171 of the Revised Code, the court of common pleas may award reasonable spousal support to either party").

{¶4} On June 25, 2009, Wife filed a motion for interim spousal support in the trial court, in which she disclosed that she recently had been diagnosed with cancer. Prior to the trial court ruling on this motion, on October 26, 2010, Wife filed a Chapter 7 bankruptcy petition, and proceedings were then stayed in the trial court. After Wife received a discharge of her debts on March 1, 2011, proceedings returned to the trial court's docket.

{¶5} Thereafter, the trial court issued an interim spousal support order, requiring Husband to pay $1,500 per month to Wife. On February 2, 2012, Wife filed a motion for contempt due to Husband's failure to pay attorney's fees as had been previously ordered in the decree and his failure to pay fully the interim spousal support as ordered. The trial court held further hearings on the remanded issues and on Wife's motion for contempt. In a journal entry dated June 8, 2012, the trial court rendered judgment on these issues. Husband timely appealed from the June 8, 2012 order, and he now raises five assignments of error for our review.

II.

**ASSIGNMENT OF ERROR I**

THE TRIAL COURT ERRED IN ITS DIVISION OF PROPERTY AND DEBTS, BY FAILING TO ALLOCATE PROPERTY TO [HUSBAND] AND FAILING TO ALLOCATE DEBTS TO [WIFE], OR TO MAKE OTHER ORDERS TO COMPENSATE [HUSBAND] FOR THE PROPERTY DISSIPATED BY [WIFE].

{¶6} In his first assignment of error, Husband maintains that, on remand, the trial court erred in its division of marital and separate property because (1) it erroneously failed to find that Wife engaged in financial misconduct after issuance of the decree, and (2) it erroneously failed to allocate to Wife any marital debt. We disagree.

{¶7} In the decree of divorce, the trial court concluded that certain property was Wife's separate property, including a brass bed and a Jerry Zelinski painting. In dividing marital property, the trial court ordered that each party retain the personal property in his and her possession. The trial court then determined that Husband had engaged in financial misconduct. Based upon this finding, the trial court ordered Husband to pay all of the unsecured debt that he had listed on a trial exhibit, including all federal, state and city income tax liabilities owed by the parties for 2005 and 2006. The trial court concluded that the division of marital property "while not equal [wa]s equitable given the financial misconduct engaged in by []Husband."

{¶8} In *Shetler I* at ¶ 26, 153, this Court determined that the trial court erred in finding that Husband engaged in financial misconduct, in concluding that the brass bed and painting were Wife's separate property, and in failing to make specific findings as to "why the undisputed items Husband claimed were his separate property were distributed to Wife based solely on possession." Accordingly, this Court remanded this matter to the trial court to re-divide the parties' assets and liabilities. *Shetler I* at ¶ 174.

{¶9} After this Court remanded this matter, the trial court held three hearings, during which Wife indicated that she had disposed of nearly all of the property awarded to her in the divorce decree. Wife claimed that she did so after the decree was issued in February 2008 and prior to the issuance of an order by this Court on May 18, 2008, wherein we restrained the parties from disposing of assets. Further, Wife maintained that, after she moved from the home, the parties' mortgage lender initiated foreclosure proceedings and changed the locks at the residence. Thereafter, the house was burglarized, and the offenders absconded with some of the property that she had left in the home after she moved. In its June 8, 2012 journal entry, the trial court found Wife's testimony on these points credible. The trial court concluded that Wife had only

incidental items of marital property left in her possession. The court then concluded that it was unable to divide the personal property dissipated by Wife, as it was no longer in the parties' possession.

{¶10} Nonetheless, Husband argues that Wife engaged in financial misconduct by giving away and selling the personal property. Pursuant to R.C. 3105.171(E)(4), "If a spouse has engaged in financial misconduct, including, but not limited to, the dissipation, destruction, concealment, nondisclosure, or fraudulent disposition of assets, the court may compensate the offended spouse with a distributive award or with a greater award of marital property." "The burden of proving financial misconduct is on the complaining spouse." *Shetler I* at ¶ 17. "The trial court has discretion in determining whether a spouse committed financial misconduct, subject to a review of whether the determination is against the manifest weight of the evidence." *Shetler I* at ¶ 18, citing *Boggs v. Boggs*, 5th Dist. Delaware No. 07 CAF 02, 2008-Ohio-1411, ¶ 73 (March 26, 2008), [citing *Mantle v. Sterry*, 10th Dist. Franklin No. 02AP-286, 2003-Ohio-6058,] citing *Babka v. Babka*, 83 Ohio App.3d 428 (9th Dist.1992). In *Shetler I* at ¶ 25, this Court explained that, in order to establish financial misconduct, the offended spouse must prove that the other spouse not only disposed of the property, but that the disposal of the property was done "with wrongful intent or scienter."

{¶11} Husband maintains that Wife wrongfully intended to defeat his property interest in disposing of the assets. However, the case law to which Husband cites in support of his argument pertains to dissipation of assets prior to the issuance of the divorce decree or in violation of a restraining order. *See Kautz v. Kautz*, 5th Dist. Stark No. 2011CA00034, 2011-Ohio-6547, ¶ 6-7, 37-41 (discussing wife's dissipation of assets prior to issuance of divorce decree in violation of restraining order), *Boggs* at ¶ 78, 81-82 (wife's $29,000 four-year lease of

a Cadillac, signed shortly before filing for divorce constituted financial misconduct based upon economic circumstances of parties), and *Smith v. Smith*, 9th Dist. Summit No. 26013, 2012-Ohio-1716, ¶ 21 (discussing husband's unilateral dissipation of assets in anticipation of divorce proceedings). Although Husband argues that Wife intentionally sought to defeat his property interest in the assets, the trial court found credible Wife's testimony that she did not dispose of the assets until they were awarded to her in the divorce decree prior to the issuance of this Court's restraining order. Husband provided no evidence to the contrary. Accordingly, we conclude that the trial court's determination that Wife had no wrongful intent in disposing of the assets was not against the manifest weight of the evidence. Therefore, insofar as Husband argues that the trial court erred in failing to find that Wife engaged in financial misconduct, his first assignment of error is overruled.

{¶12} Next, Husband argues that the trial court erred in failing to allocate purported marital debt to Wife. "Although Ohio's divorce statutes do not generally articulate debt as an element of marital and separate property, the rules concerning marital assets are usually applied to marital and separate debt as well." *Phillips v. Phillips*, 5th Dist. Morrow No. 12CA0020, 2013-Ohio-3538, ¶ 27, citing *Vonderhaar-Ketron v. Ketron*, 5th Dist. Fairfield No. 10CA22, 2010-Ohio-6593. "Marital debt is 'any debt incurred during the marriage for the joint benefit of the parties or for a valid marital purpose.'" *Phillips* at ¶ 27, quoting *Ketchum v. Ketchum*, 7th Dist. No. 2001 CO60, 2003-Ohio-2559, citing Turner, Equitable Division of Property (2d Ed.1994).

{¶13} In its June 8, 2012 journal entry, the trial court ordered Husband to pay the federal and state tax arrearages and the separate and marital debts held in his name. In its findings of

fact, the trial court noted that Husband had submitted an exhibit listing his debts in the amount of $116,878. However, the trial court then explained,

> [The] debts included $78,200 of federal income taxes he didn't pay * * *. It also included approximately $28,000 in credit card debt with no details as to when he incurred debt on these cards or whether he used these cards for personal or business purposes. There was no explanation as to his personal notes for $10,000. He also listed $1,440 in Ohio back taxes.

{¶14} Where a party fails to present evidence relative to property division, the party has essentially forfeited its argument as to division. *See Kautz* at ¶ 16, quoting *Roberts v. Roberts*, 10th Dist. Franklin No. 08AP-27, 2008-Ohio-6121, ¶ 22, ("[I]f a party fails to present sufficient evidence of valuation, that party has presumptively waived the right to appeal the distribution of those assets because the trial court can only make decisions based on the evidence presented[.]"), and *Phillips* at ¶ 27 ("rules concerning marital assets are usually applied to marital and separate debt as well"). Thus, Husband's failure to present evidence as to the credit card debts and the personal notes "is akin to invited error," and Husband forfeited his argument pertaining to division of those debts. *See Kautz* at ¶ 16, citing *Roberts* at ¶ 21.

{¶15} In specific regard to the tax delinquency, we noted in *Shetler I* at ¶ 6, that the evidence demonstrated that the parties had incurred a $43,747.33 tax liability as of the date of trial. In the decree, the trial court ordered Husband to pay this debt due to his financial misconduct. In *Shetler I* at ¶ 23, we concluded that the trial court's determination that Husband engaged in financial misconduct was not supported by the evidence. Therefore, Husband argues that, on remand, the trial court should have found the tax liability to constitute marital debt. However, Husband does not argue that the trial court erred in failing to order Wife to pay a portion of the debts, as Husband acknowledges in his merit brief that "obviously [Wife] is not capable of doing so." Instead, Husband argues that he should have received a set-off against his

other obligations, such as spousal support or attorney's fees, which the trial court determined were in the nature of spousal support.

{¶16} However, distributive property division awards should not be commingled with spousal support. R.C. 3105.171(C)(3) provides that "[t]he court shall provide for an equitable division of marital property under this section prior to making any award of spousal support to either spouse under section 3105.18 of the Revised Code and without regard to any spousal support so awarded." Therefore, "[b]y expressly stating that a trial court must divide the marital property 'without regard' to the award of spousal support, the General Assembly clearly intended to stop a trial court from combining the two awards." *Miller v. Miller*, 5th Dist. Coshocton No. 06 CA 3, 2006-Ohio-7019, ¶ 20, citing *Spurlock v. Spurlock,* 11th Dist. Ashtabula No. 94-A-0026, 1995 WL 869966 (Dec. 15, 1995). *See also Krisher v. Krisher*, 82 Ohio App.3d 159, 165 (3d Dist.1992) ("trial court committed error in awarding a setoff against spousal support to compensate appellant for a cash award he is entitled to receive from appellee to achieve equity in the distribution of marital assets"). Accordingly, the trial court did not err in failing to grant Husband a set-off for marital debt against his spousal support obligation.

{¶17} Based upon the foregoing, Husband's first assignment of error is overruled.

## ASSIGNMENT OF ERROR II

THE TRIAL COURT ERRED IN FAILING TO HOLD THAT [WIFE]'S ATTORNEY['S] FEES FOR PRE-BANKRUPTCY SERVICES WERE DISCHARGED IN BANKRUPTCY, AND NEVERTHELESS ORDERING [HUSBAND] TO PAY SUCH FEES, AS SUCH ORDER VIOLATES THE BANKRUPTCY DISCHARGE INJUNCTION.

{¶18} In his second assignment of error, Husband argues that the trial court erred in ordering Husband to pay $15,431 in attorney's fees to Wife as ordered in the decree, and in

ordering Husband to pay Wife's attorney's fees incurred after the decree was issued and prior to her bankruptcy filing. We disagree.

{¶19} The order requiring Husband to pay $15,431 in Wife's attorney's fees was issued as part of the divorce decree on February 6, 2008. Husband challenged the attorney fees ruling in his initial appeal. *See Shetler I* at ¶ 168-173. This Court concluded that the trial court did not abuse its discretion in awarding the attorney fees to Wife, and we overruled Husband's assignment of error pertaining to this issue. *Id.* at ¶172-73. In its June 8, 2012 order, the trial court re-imposed the award of attorney fees. The trial court also awarded Wife attorney fees that had been incurred after the issuance of the decree. It is undisputed that Wife incurred all of the pre-decree, and a portion of the post-decree, attorney fees prior to her bankruptcy discharge.

Attorney Fees Incurred Prior to Decree

{¶20} In re-imposing the attorney fees awarded in the decree, the trial court appeared to rely in large measure upon the law-of-the-case doctrine. This doctrine holds that "the decision of a reviewing court in a case remains the law of that case on the legal questions involved for all subsequent proceedings in the case at both the trial and reviewing levels." *Nolan v. Nolan*, 11 Ohio St.3d 1, 3-4 (1984). "Thus, where at a rehearing following remand a trial court is confronted with substantially the same facts and issues as were involved in the prior appeal, the court is bound to adhere to the appellate court's determination of the applicable law." *Id.*

{¶21} In *Houk v. Spring-Houk*, ("*Houk I*"), 5th Dist. Licking No. 07CA0046, 2007-Ohio-6472, this Court reviewed a divorce decree from which the husband appealed, arguing, in part, that the trial court erred in dividing the parties' property and in awarding the wife attorney fees. We agreed with the husband that the trial court erred in dividing the parties' retirement accounts. *Id.* at ¶ 24. However, we overruled the husband's assignment of error wherein he

argued that the trial court erred in awarding attorney fees to the wife. *Id.* at ¶ 42. Following our remand in *Houk I*, the trial court issued a modification to the divorce decree. *Houk v. Spring-Houk*, ("*Houk II*"), 5th Dist. Licking No. 08 CA 22, 2008-Ohio-5674, ¶ 4-8. The husband appealed from the order modifying the decree, arguing in part that the trial court erred in failing to reassess attorney fees. *Id.* at ¶ 11. We agreed. *Id.* at ¶ 17. We reasoned that, in a divorce proceeding, R.C. 3105.73(A) allows a trial court to "award all or part of reasonable attorney's fees and litigation expenses to either party if the court finds the award equitable." *Id.* at ¶ 18. In determining whether such an award is equitable, "the court may consider *the parties' marital assets and income*, any award of temporary spousal support, the conduct of the parties, and any other relevant factors the court deems appropriate." (Emphasis sic.) *Id.*, quoting R.C. 3105.73(A). Therefore, we determined that it was implicit in *Houk I* that our remand "warranted at least a basic reassessment by the trial court of its award of * * * attorney fees." *Id.* at ¶ 19.

{¶22} Therefore, based upon our reasoning in *Houk II* we conclude that, facially, our remand in *Shetler I* required the trial court to reassess the decree's award of attorney fees in light of changes to the property division. However, unlike *Houk II*, the trial court here was unable to re-divide the parties' property on remand based upon dissipation of the majority of the personal property, as set forth in our discussion of Husband's first assignment of error. Therefore, the parties' property distribution, essentially unaltered from the decree, would not, in this case, require the trial court to reassess the initial award of attorney fees as contained in the decree. Therefore, we conclude, as we did in *Shetler I* at ¶ 172-173, that the trial court did not abuse its discretion in awarding attorney fees to Wife in the amount of $15,431.

Attorney's Fees Incurred Prior to Bankruptcy Discharge

{¶23} Husband has nonetheless urged us to vacate the award of attorney fees for all fees incurred prior to Wife's bankruptcy discharge, because he argues that the effect of the discharge of Wife's debt to her attorney will result in Wife receiving a windfall.

{¶24} In *Mallin v. Mallin*, 102 Ohio App.3d 717 (8th Dist.1995), the Eighth District considered a similar argument. There, as part of the divorce decree, the trial court ordered the husband to pay $15,000 to the wife for her attorney's fees. *Id.* at 719. Thereafter, the wife filed for bankruptcy. *Id.* at 720. The husband then moved "for a discharge" of the $15,000 judgment, arguing that "enforcing that part of the divorce decree ordering him to pay $15,000 to the wife for attorney fees, despite that debt having been discharged in bankruptcy, amounted to a forced 'contribution' despite there being no legal obligation for the wife to repay that debt." *Id.* at 720-721. The trial court denied the husband's motion, and he appealed. *Id.* at 720. The Eighth District affirmed. In rejecting the husband's argument pertaining to the common-law principles of contribution, the Eighth District noted that the award of attorney fees was in the nature of alimony. *Id.* at 722. Therefore, "the husband's debt to the wife [wa]s separate and distinct from the debt the wife owed to her attorney." *Id.* Accordingly, "[t]he husband's obligation to pay alimony continue[d] to exist regardless of whether the wife's debt to her attorney is discharged in bankruptcy." *Id.* Further, the Eighth District addressed an argument advanced by the husband that the wife would be unjustly enriched by payment of attorney's fees, similar to the argument advanced in the present case that Wife will receive a "windfall" from the attorney fees award. *See id.* In *Mallin*, the Eighth District rejected the argument because, "in essence, the husband argue[d that] he can delay paying his share of attorney fees until such time as his wife is forced to file for bankruptcy, and then escape his obligation to pay those attorney fees because her debt

to the attorney, although occasioned in part by his refusal to pay, is discharged." *Id.* at 722. The Eighth District concluded that it knew of "no equitable principles that would permit such a result." *Id.*

{¶25} We find the reasoning employed by the Eight District persuasive. Accordingly, as Husband has made no challenge to the award of attorney fees other than that he should not be required to pay Wife for fees incurred pre-bankruptcy because wife's obligation has been discharged, Husband's second assignment of error is overruled.

## ASSIGNMENT OF ERROR III

THE TRIAL COURT ABUSED ITS DISCRETION IN ITS SPOUSAL SUPPORT ORDER BY ORDERING AN AMOUNT UNREASONABLY LARGE, BEYOND THE ABILITY OF [HUSBAND] TO PAY AND WELL BEYOND THE NEED OF [WIFE] FOR SUPPORT.

{¶26} In his third assignment of error, Husband argues that the trial court erred in awarding Wife $1500 per month in spousal support. We disagree.

{¶27} "It is well-established that the trial court enjoys wide latitude in determining the appropriateness as well as the amount of spousal support." *Sears v. Sears*, 5th Dist. Knox No. 12-CA-09, 2012-Ohio-5968, ¶ 26, citing *Bolinger v. Bolinger*, 49 Ohio St.3d 120 (1990). Therefore, this Court will not reverse a trial court's award of spousal support absent an abuse of discretion. *Sears* at ¶ 26, citing *Kunkle v. Kunkle*, 51 Ohio St.3d 64, 67 (1990), and *Cherry v. Cherry*, 66 Ohio St.2d 348, 352 (1981).

{¶28} R.C. 3105.18(B) and (C) provide:

(B) In divorce and legal separation proceedings, upon the request of either party and after the court determines the division or disbursement of property under section 3105.171 of the Revised Code, the court of common pleas may award reasonable spousal support to either party. * * *

(C)(1) In determining whether spousal support is appropriate and reasonable, and in determining the nature, amount, and terms of payment, and duration of spousal

support, which is payable either in gross or in installments, the court shall consider all of the following factors:

(a) The income of the parties, from all sources, including, but not limited to, income derived from property divided, disbursed, or distributed under section 3105.171 of the Revised Code;

(b) The relative earning abilities of the parties;

(c) The ages and the physical, mental, and emotional conditions of the parties;

(d) The retirement benefits of the parties;

(e) The duration of the marriage;

(f) The extent to which it would be inappropriate for a party, because that party will be custodian of a minor child of the marriage, to seek employment outside the home;

(g) The standard of living of the parties established during the marriage;

(h) The relative extent of education of the parties;

(i) The relative assets and liabilities of the parties, including but not limited to any court-ordered payments by the parties;

(j) The contribution of each party to the education, training, or earning ability of the other party, including, but not limited to, any party's contribution to the acquisition of a professional degree of the other party;

(k) The time and expense necessary for the spouse who is seeking spousal support to acquire education, training, or job experience so that the spouse will be qualified to obtain appropriate employment, provided the education, training, or job experience, and employment is, in fact, sought;

(l) The tax consequences, for each party, of an award of spousal support;

(m) The lost income production capacity of either party that resulted from that party's marital responsibilities;

(n) Any other factor that the court expressly finds to be relevant and equitable.

{¶29} In *Shetler I*, because this Court "reversed the trial court's finding [that] Husband engaged in financial misconduct and remanded the case for a re-division of the parties' marital and separate assets and liabilities," we also reversed and remanded the award of spousal support

for reconsideration in accordance with R.C. 3105.18(B) & (C)(1). *Shetler I* at ¶ 166, citing *Raff v. Raff*, 5th Dist. Stark No. 2004CA00251, 2005-Ohio-3348; *Hurte v. Hurte*, 164 Ohio App.3d 446, 2005-Ohio-5967 (4th Dist.).

{¶30} In the trial court's order following remand, it enumerated each factor contained within R.C. 3105.18(C)(1), and applied each factor to the circumstances presented in this case. Relevant factors included that Husband's income had declined in 2009 and 2010 to less than $50,000 per year, which was less than half of what his income had been in 2007 and 2008, and Wife's income consisted of $674 per month in SSI and $200 per month in food stamps. *See* R.C. 3105.18(C)(1)(a). Wife was unable to work due to her poor health, and Husband's income had declined due to his health issues and changes to his area of legal practice. *See* R.C. 3105.18(C)(1)(b). Wife was fifty-two years old, had serious health problems that affected her physical, mental and emotional health, and she required serious dental work, which would not be covered by Medicaid. *See* R.C. 3105.18(C)(1)(c). Husband was sixty-four years old, suffered from health issues which were controlled, had no health insurance, but his health issues did not interfere with his ability to work full time. *See* R.C. 3105.18(C)(1)(c). The parties had been married for twenty-five years, and they had enjoyed an affluent lifestyle during their marriage, which lifestyle was now beyond their means. *See* R.C. 3105.18(C)(1)(e) and (C)(1)(g). Wife attended college and worked prior to the birth of the parties' first child, after which she left her employment to care for the children and the home. *See* R.C. 3105.18 (C)(1)(h). After the parties divorced, she worked part-time, but presently was unable to do so because of her health problems. *See* R.C. 3105.18(C)(1)(h). Husband had obtained a law degree, and had practiced law for over thirty-eight years. *See* R.C. 3105.18(C)(1)(h). The parties had no assets, and Husband claimed substantial debt. *See* R.C. 3105.18(C)(1)(i). Further Husband was obligated to

pay previous spousal support and attorney fees; whereas Wife discharged her debts in bankruptcy. *See* R.C. 3105.18(C)(1)(i). The trial court determined that the Wife's trust would receive the spousal support and pay taxes on the amounts received, and that Husband would deduct periodic spousal support payments on his taxes, but not the lump sum attorney fees. *See* R.C. 3105.18(C)(1)(l).

{¶31} Further, in addition to considering Husband's financial circumstances, the trial court ordered that $750 of the $1500 monthly support obligation would be paid to Wife's attorney, thereby allowing Husband to gain a credit towards the outstanding attorney fees he owed. In addition, the trial court determined that Husband's spousal support obligation would not be retroactive to July 1, 2009 as urged by Wife, and instead established December 1, 2011 as the effective date for spousal support.

{¶32} Therefore, based upon the above, we conclude that the trial court appropriately considered the statutory factors in determining the amount of the spousal support obligation, and the trial court acted within its broad discretion in determining that spousal support in the amount of $1,500 per month was reasonable and appropriate under these circumstances. *See Sears,* 2012-Ohio-5968, at ¶ 26.

{¶33} Accordingly, Husband's third assignment of error is overruled.

## ASSIGNMENT OF ERROR IV

THE TRIAL COURT ERRED IN HOLDING [HUSBAND] IN CONTEMPT OF COURT BECAUSE THE UNDERLYING ORDERS SHOULD BE REVERSED AND [HUSBAND]'S DEFENSE OF IMPOSSIBILITY SHOULD HAVE BEEN SUSTAINED.

{¶34} In his fourth assignment of error, Husband argues that the trial court erred in finding him in contempt for failure to pay the attorney fees within 90 days of issuance of the decree, as ordered in the decree and for failure to fully pay the interim spousal support order

because the underlying orders were in error and because he successfully proved the defense of impossibility.

{¶35} "An appellate court's standard of review of a trial court's contempt finding is abuse of discretion." *Snider v. Snider*, 5th Dist. Fairfield No. 11-CA-58, 2013-Ohio-1168, ¶ 6, citing *State ex rel. Celebrezze v. Gibbs*, 60 Ohio St.3d 69 (1991). Therefore, we will not reverse such a finding unless the trial court's decision was unreasonable, arbitrary, or unconscionable. *Snider* at ¶ 6, citing *Blakemore v. Blakemore*, 5 Ohio St.3d 217 (1983). With these principles in mind, we will address separately the trial court's contempt findings as to nonpayment of attorney fees and interim spousal support.

Attorney Fees

{¶36} In its June 8, 2012 entry, the trial court found Husband in contempt for his failure to pay Wife the attorney fee award contained in the decree within 90 days of the issuance of the decree, an order which the trial court stated that this Court affirmed in *Shetler I*.

{¶37} As set forth in our discussion of Husband's second assignment of error, this Court has held that a reversal of a trial court's property division with a remand to re-divide property impliedly requires a trial court to reassess attorney fees. *See Houk II*, 2008-Ohio-5674, at ¶ 19. Thus, our reversal of the property division in *Shetler I* implicitly served as a remand for reconsideration of the attorney fee award contained in the divorce decree. In his fourth assignment of error, Husband generally argues that where the order underlying a contempt finding is reversed, the order of contempt for failing to abide by that order must also be reversed. However, Husband has presented this argument as axiomatic and has directed this Court to no authority supporting this proposition. We note from our independent review, that our sister districts have held that, *based upon the circumstances of the case*, the reversal of a finding of

civil contempt *may be appropriate* where the underlying order has been reversed. *See Foley v. Foley*, 10th Dist. Franklin Nos. 05AP-242, 05AP-463, 2006-Ohio-946, ¶ 35 ("depending on the circumstances of a case, a finding of civil contempt may not survive if the underlying judgment or order is reversed"), and *Slone v. Slone*, 4th Dist. Pike No. 96CA586, 1998 WL 191840, *2 (Mar. 31, 1998), fn. 3-4 (reasoning that application of rule that civil contempt cannot survive reversal of the underlying order was not appropriate under the facts presented). However, as Husband has failed to develop an argument on this point, we decline to do so on his behalf. *Hurst v. Hurst*, 5th Dist. No. 12-CA-70, 2013-Ohio-2674, ¶ 58, quoting *Frye v. Holzer Clinic, Inc.*, 4th Dist. No. 07CA4, 2008-Ohio-2194, ¶ 12 ("We may disregard any assignment of error that fails to present any citations to case law or statutes in support of its assertions."). *See also* App.R. 16(A)(7) (appellant's brief to contain "[a]n argument with respect to each assignment of error presented for review and the reasons in support of the contentions, with citations to the authorities * * * on which appellant relies"). Accordingly, insofar as Husband argues that the trial court erred in finding him in contempt for his failure to pay Wife's attorney fees as ordered in the decree, Husband's fourth assignment of error is overruled.

Interim Spousal Support

{¶38} In regard to the interim spousal support order, Husband maintains that the trial court should have sustained his defense of impossibility to pay because "[i]t is clear that [he] made a good faith effort to pay spousal support in compliance with the trial court's order, but simply did not have the funds to pay the ordered amount in full." However, Husband has not further developed this argument, nor has he supplied citations to the record where the facts constituting his purported "good faith effort" and lack of funds are located. "It is the duty of the appellant, not this court, to demonstrate [his] assigned error through an argument that is

supported by citations to legal authority and facts in the record." *See State v. Snyder*, 5th Dist. Licking No. 2008-CA-25, 2009-Ohio-2473, ¶ 30, quoting *State v. Taylor*, 9th Dist. Medina No. 2783-M, 1999 WL 61619, *3 (Feb. 9, 1999); *see also* App.R. 16(A)(7) (appellant's brief to include "[a]n argument containing the contentions of the appellant with respect to each assignment of error presented for review and the reasons in support of the contentions, with citations to the authorities, statutes, and *parts of the record on which appellant relies*" (Emphasis added.)). Accordingly, we decline to address Husband's argument as to the contempt finding with regard to non-payment of the interim spousal support order. *See* App.R. 12(A)(2) (appellate court "may disregard an assignment of error presented for review if the party raising it fails to identify in the record the error on which the assignment of error is based or fails to argue the assignment separately in the brief, as required under App.R. 16(A)"), and *State v. Linzy*, 5th Dist. Richland No. 2012-CA-33, 2013-Ohio-1129, ¶ 97 (appellant cannot demonstrate the claimed error where he fails to properly reference those portions of the record supporting his claim.)

{¶39} Therefore, insofar as the trial court found Husband in contempt for his failure to pay in full the interim spousal support award, Husband's fourth assignment of error is overruled.

## ASSIGNMENT OF ERROR V

THERE WERE MANY IRREGULARITIES AT TRIAL, WHICH, TAKEN TOGETHER, RESULTED IN INJUSTICE TO [HUSBAND] AND WERE AN INDICATION OF THE COURT'S BIAS TOWARD [WIFE].

{¶40} In his fifth assignment of error, Husband maintains that the trial court judge exhibited behaviors upon remand which indicated that she was biased against Husband, preventing him from receiving a fair hearing.

{¶41} "The terms 'bias' or 'prejudice' refer to 'a hostile feeling or spirit of ill will on the one hand, or undue friendship or favoritism on the other, toward one of the litigants or his or

her attorneys, with a formation of a fixed anticipatory judgment on the part of a judge as distinguished from an open state of mind which will be governed by the law and the facts.'" *Hurst v. Hurst*, 5th Dist. Licking No. 12-CA-70, 2013-Ohio-2674, ¶ 67, quoting Ohio Jurisprudence 3d 203, Courts and Judges, Section 126 (1988). Challenges of judicial prejudice and bias are not properly brought before the appellate court. "Rather, [A]ppellant must make such a challenge under the provisions of R.C. 2701.03, which requires an affidavit of prejudice to be filed with the Supreme Court of Ohio." *Baker v. Ohio Department of Rehabilitation and Correction*, 144 Ohio App.3d 740, 754 (4th Dist.2001). "The Chief Justice of the Supreme Court of Ohio, or [her] designee, has exclusive jurisdiction to determine a claim that a common pleas judge is biased or prejudiced." *Szerlip v. Szerlip*, 5th Dist. Knox No. 01CA16, 2002 WL 1270849, *3 (May 20, 2002), quoting *Jones v. Billingham* 105 Ohio App.3d 8, 11 (2d Dist.1995). Thus, an appellate court lacks the authority to reverse a trial court's decision on the basis of judicial bias or prejudice. *Szerlip* at *3.

{¶42} Accordingly, Husband's fifth assignment of error is overruled.

III.

{¶43} Husband's assignments of error are overruled. The judgment of the trial court is affirmed.

Judgment affirmed.

————

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Stark, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

CARLA MOORE
FOR THE COURT

BELFANCE, J.
WHITMORE, J.
CONCUR.

APPEARANCES:

MARJORIE R. PERLMAN, Attorney at Law, for Appellant.

JAMES A. ADLON, Attorney at Law, for Appellee.